```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION


LAUFER GROUP INTERNATIONAL, LTD.,  §
                                   §
               Plaintiff,          §
                                   §
v.                                 §   CIVIL ACTION NO. H-08-1083
                                   §
RGL-ROAM ENTERPRISES, et al.,      §
                                   §
               Defendants.         §
```

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Laufer Group International, Ltd.'s ("Laufer") Motion for Summary Judgment on its claims asserted against defendants Superior Granite & Marble, LLC ("Superior"), Indus Granite (Texas), Inc. ("Indus"), Pacific Shore Stones LLC ("Pacific"), Vivaldi Commercial LLC ("Vivaldi"), and KSV World of Granite LLC ("KSV") (Docket Entry No. 93). Defendants Superior, Indus, Pacific, and Vivaldi responded to Laufer's Motion (Docket Entry Nos. 111, 118), and Laufer replied (Docket Entry Nos. 121, 123, 124). KSV did not respond to Laufer's motion. For the reasons stated below, Laufer's motion for summary judgment will be granted in part and denied in part.

Also pending before the court is Defendants Superior, Indus, Pacific, and Vivaldi's Motion for Summary Judgment (Docket Entry No. 102).[1] Laufer responded to defendants' motion (Docket Entry

---

[1] Defendants's original motion is Docket Entry No. 94, but an amended version of the motion was filed later and is Docket Entry No. 102.

No. 112), and defendants replied (Docket Entry No. 119).  For the reasons stated below, defendants' motion for summary judgment will be denied.

## I.  Background

Laufer is a non-vessel operating common carrier ("NVOCC") that provides international shipping services.[2]  Superior, Indus, Pacific, Vivaldi, and KSV are all importers of granite and stone products.[3]  RGL-ROAM Enterprises, LLC ("ROAM") acts as a freight forwarder for shippers importing goods into the United States.[4]  ROAM essentially acts as an intermediary between shippers and importers and charges a fee for linking the two.  Beginning in August of 2007 Michael Koch, purporting to act on behalf of ROAM, quoted rates of approximately $2,000.00 per container for shipment of granite from South America to the United States.[5]  These rates had been communicated to Koch by Anthony Piazza, a Laufer employee.  Koch subsequently quoted the rate to many parties, including Superior, Indus, Pacific, Vivaldi, and KSV.[6]

---

[2] See Declaration of Mark Laufer, at ¶ 2, Exhibit A attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 93.

[3] Id. at ¶¶ 3-7.

[4] See plaintiff's Second Amended Complaint, Docket Entry No. 66, at ¶ 3.

[5] Id. at ¶ 32.

[6] Id. at ¶ 33; see also Defendants' Motion for Summary Judgment, Docket Entry No. 94 at 11.

During this same period Laufer had published tariffs that governed its shipping rates.[7] The published tariffs were for rates between $3,200.00 and $4,800.00 per container.[8] Laufer provided services to Superior, Indus, Pacific, Vivaldi, and KSV and billed them at the rates listed in the published tariffs.[9] None of the defendants paid the full amount billed. Superior's unpaid balance is $38,106.82; Indus's unpaid balance is $31,459.82; Pacific's unpaid balance is $33,358.60; Vivaldi's unpaid balance is $15,030.00; and KSV's unpaid balance is $10,230.11.[10] Laufer seeks summary judgment on its claims to recover these amounts.

Superior, Indus, Pacific, and Vivaldi argue that they are not liable for the posted tariff rate because of their agreements with ROAM or, alternatively, that the tariff is invalid.[11] They seek summary judgment on Laufer's claims for the unpaid balances. They also seek summary judgment on their counterclaims for unlawful

---

[7] See Declaration of Mark Laufer, at ¶ 16, Exhibit A attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 93.

[8] See Tariff Change Requests, Exhibit A-6 attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 93.

[9] See Invoices, Exhibits A-7, A-8, A-9, A-10, and A-11 attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 93.

[10] See Declaration of Mark Laufer, at ¶¶ 30, 37, 44, 49, and 58, Exhibit A attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 93.

[11] See Defendants' Motion for Summary Judgment, Docket Entry No. 102.

freight overcharges and improper storage fees.[12]   KSV has not responded to Laufer's motion.

## II.   Summary Judgment Standard

The court may grant summary judgment if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An examination of substantive law determines which facts are material.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). Material facts are those facts that "might affect the outcome of the suit under governing law."  Id.  A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor.  Id. at 2511.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 106 S. Ct. at 2553.  In response to such a showing, the nonmoving party must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material fact that must be resolved at trial.  Id.

---

[12] Id. at 23.

## III.  Analysis

### A.  Plaintiff's Claims Against Moving Defendants

The Shipping Act of 1984, 46 U.S.C. § 40101, et seq. (the "Shipping Act"), was designed to "establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs."  46 U.S.C. § 40101(a).  The Shipping Act requires carriers such as Laufer to "keep open to public inspection in an automated tariff system, tariffs showing all its rates, charges, classifications, rules, and practices between all points or ports on its own route and on any through transportation route that has been established."  46 U.S.C. § 40501(a)(1).  It also prohibits carriers from providing service that is not in accordance with those rates.  46 U.S.C. § 41104(2).

These provisions have been read by courts to establish "strict filed rate requirements and to forbid equitable defenses to collection of the filed tariff."  Maislin Industries, U.S., Inc. v. Primary Steel, Inc., 110 S. Ct. 2759, 2766 (1990).  This reading has become known as the "filed rate doctrine."  Id.  While the filed rate doctrine was originally developed based on the terms of the Interstate Commerce Act, it has been held equally applicable to the Shipping Act since the Shipping Act was modeled after the Interstate Commerce Act, and courts have given the two acts "like interpretation, application and effect."  United States Navigation

Co. v. Cunard S.S. Co., 52 S. Ct. 247, 249 (1932); Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatamba Squares, 508 F.2d 1116 (5th Cir. 1975).

The filed rate doctrine mandates that "the rate of the carrier duly filed is the only lawful charge." Louisville & Nashville R. Co. v. Maxwell, 35 S. Ct. 494, 495 (1915).

> Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work a hardship in some cases, but it embodies the policy which has been adopted by Congress. . . Thus, even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff.

AT&T v. Central Office Telephone, Inc., 118 S. Ct. 1956, 1962-63 (1998) (citing Louisville, 35 S. Ct. at 495).  Given the strict application of the filed rate doctrine, defendants are liable for the full rate published in Laufer's tariff unless it is invalid or an exception to the filed rate doctrine is applicable in this case.

### 1.  Existence of a Written Agreement

The moving defendants argue that they are not required to pay Laufer's published rates pursuant to a statutory exception to the filed rate doctrine.  The Shipping Act provides that "a court may not order a person to pay the difference between the amount billed and agreed upon in writing with a common carrier or its agent and

the amount set forth in a tariff or service contract by that common carrier for the transportation service provided." 46 U.S.C. § 41109(d). The moving defendants argue that this provision applies because they negotiated a rate through ROAM that governs the shipping provided by Laufer.[13]

In order for 46 U.S.C. § 41109(d) to apply defendants must present evidence of a written agreement between themselves and Laufer or one of its agents. Defendants argue that Koch and/or ROAM were their agents for securing shipments of granite and that as their agent, ROAM negotiated a written agreement with Laufer to ship at rates below the published tariff rates.[14] Alternatively, defendants argue that Koch and ROAM were also acting as Laufer's agents, and their offers of low shipping rates bound Laufer to those terms. Laufer argues that there is no evidence of a written agreement binding it to rates other than the tariff rates.

In order to succeed on their argument defendants must show that there was a written agreement establishing rates other than those in the tariff and that Laufer is bound by that agreement. Defendants have presented questions of material fact on both issues, precluding summary judgment in Laufer's favor. However, their evidence is not so overwhelming that it precludes a reasonable fact-finder from finding in Laufer's favor.

---

[13]See Defendants' Motion for Summary Judgment, Docket Entry No. 102 at 16.

[14]See id.

Accordingly, defendants are not entitled to summary judgment in their favor.[15]

Defendants have presented evidence that ROAM was acting as their agent when ROAM entered into written agreements with Laufer pursuant to which Laufer would provide transportation services at a rate below the published tariff. This evidence includes booking orders submitted to Laufer by ROAM on behalf of the defendants. The booking orders are essentially ROAM's orders for shipping services to be provided by Laufer to the defendants, and each booking order shows a rate of $2,000.00 per unit shipped.[16] These booking orders are then followed by invoices from Laufer to ROAM showing a roughly equivalent rate.[17] In contract parlance, ROAM's

---

[15] Laufer previously filed a similar motion for summary judgment against two other defendants in this lawsuit, Docket Entry No. 67. The court granted that motion because those defendants did not present any evidence of a written agreement, Docket Entry No. 82. Laufer argues that the motion currently pending before the court is identical to its previously filed motion. This is not the case. The current motions were filed with the benefit of additional discovery and include substantially more documentary evidence in defendants' favor. Every motion before the court is considered on its own merits, without regard to different motions filed against different parties and supported by different evidence.

[16] See Invoices, Booking Orders, and Bills of Lading, Exhibits K-N attached to Defendants' Motion for Summary Judgment, Docket Entry No. 94.

[17] Id. Although there is a slight differential between the rates in ROAM's booking orders and the rates in Laufer's invoices, both rates are well below the published tariff rates. The court assumes that the parties will account for these differences through
(continued...)

booking orders were offers to pay a certain rate for Laufer's services, which Laufer accepted when it commenced performance by shipping the freight and sent invoices back to ROAM.  Since a purchase order followed by an invoice for the same rate can create a valid written contract, defendants have presented evidence sufficient to raise a question of fact regarding the existence of a written agreement.  See Mid-South Packers, Inc. v. Shoney's, Inc., 761 F.2d 1117, 1122 (5th Cir. 1985).  This agreement is allegedly confirmed by Laufer in the Bills of Lading it issued for these shipments.  They include a section marked "Freight Rate Charges."  In that section, the words "As Per Agreement" have been typed in.[18]  Defendants argue that this is an acknowledgment by Laufer of its agreement to a rate other than the tariff rate.

Following the invoices from Laufer to ROAM, ROAM sent invoices to defendants, billing them for the services provided by Laufer.[19]  The rate billed to defendants by ROAM is slightly more than the rate billed by Laufer to ROAM, presumably to compensate ROAM for its services.[20]  The booking orders and invoices, both from Laufer and ROAM, together with the bills of lading, support defendants'

---

[17](...continued)
testimony at trial.

[18]Id.

[19]Id.

[20]Id.

argument that ROAM negotiated rates with Laufer on their behalf and that they are entitled to the protection of 46 U.S.C. § 41109(d). Accordingly, defendants have presented evidence sufficient to allow a fact-finder to reasonably determine that a written agreement for shipment at the $2,000.00 rate existed.

However, defendants have not conclusively established the existence of such an agreement. Laufer presented evidence that it sold transportation services at its standard tariff rates to ROAM and that ROAM independently, and without authorization, resold the services to its customers at different rates. If Laufer can prove this, then there were no valid written agreements, and defendants are obligated to pay the full amount of the tariff.

Laufer supports this argument in two ways. First, it argues that neither ROAM nor Koch was ever its agent and that any written agreement entered into by ROAM is not binding on Laufer. This argument, even if established, does not defeat defendants' motion. As noted above, defendants have presented evidence that Laufer itself actually consented to the written agreement and that ROAM was the agent for defendants. If defendants can prove this, it is irrelevant whether ROAM also acted as an agent of Laufer.[21]

---

[21]The facts at trial may ultimately show that ROAM was an agent for neither Laufer nor the defendants, but an independent contractor acting as an intermediary. See Constructores Tecnicos, S. De R.L. v. Sea-Land Service, Inc., 945 F.2d 841, 848 (5th Cir. 1991). If this is the case, defendants may still prevail by
(continued...)

Laufer's second argument is that it never actually agreed to the $2,000.00 per unit rate. In support of this argument Laufer presents deposition testimony from James Rose, the president of ROAM.[22] Rose testified that ROAM received two separate sets of invoices from Laufer and that Koch told him that one of the sets was sent in error.[23] According to Laufer, the correct set of invoices reflected the tariff rate.[24]

Laufer also points to contradictory statements made by Anthony Piazza, Laufer's Houston representative. In Piazza's Affidavit he states that he negotiated rates with Michael Koch on behalf of Laufer.[25] However, in his Declaration Piazza states that he and Michael Koch actually developed a scheme that included the dissemination of fraudulent invoices without Laufer management approval, and that Laufer never had a written agreement with ROAM or its customers.[26] This testimony raises a genuine issue of

---

[21](...continued)
showing that Laufer's own actions bound it to the written agreements.

[22]See Oral Deposition of James Michael Rose, Exhibit B attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 93.

[23]Id. at 55-57.

[24]See plaintiff's Opposition to Defendants' Motion for Summary Judgment, Docket Entry No. 112 at 18.

[25]See Affidavit of Anthony Piazza, Exhibit O attached to Defendants' Motion for Summary Judgment, Docket Entry No. 94.

[26]See Declaration of Anthony Piazza, Exhibit P attached to
(continued...)

material fact regarding the authenticity and applicability of the invoices submitted with defendants' motion for summary judgment.[27]

The authenticity of the booking orders is also called into question by Laufer, which claims that it never received these documents.[28] Laufer also argues that the words "as per agreement" on the bills of lading do not actually indicate a written agreement apart from the tariff, but is a standard industry notation used to prevent competitors from learning other carriers' rates.[29] The evidence submitted by Laufer precludes summary judgment in defendants' favor.

### 2. Validity of Tariff

Defendants also claim that they are not liable for the full tariff rate because the tariffs Laufer seeks to apply are invalid.[30] Defendants present three categories of evidence in support of this

---

[26](...continued)
Defendants' Motion for Summary Judgment, Docket Entry No. 94.

[27] Piazza's Declaration also raises a question as to whether Laufer would be bound by a written agreement fraudulently entered into by Piazza. Laufer does not brief this issue exhaustively. However, even if it had, defendants have presented to withstand summary judgment. Specifically, defendants argue that the language on the bills of lading amounts to a ratification of the agreement by Laufer.

[28] See plaintiff's Reply Brief in Support of Motion for Summary Judgment, Docket Entry No. 121 at 7.

[29] Id.

[30] See Defendants' Motion for Summary Judgment, Docket Entry No. 102 at 8-14.

argument.  First, defendants point out that several of the bills of lading list Laufer Freight Lines, Ltd. as the carrier and that Laufer Freight Lines, Ltd. is a separate entity from Laufer Group International, Ltd.  Accordingly, defendants argue that plaintiff does not have standing to assert claims based on those bills of lading.  The court gives plaintiff leave to correct this error by naming the appropriate plaintiffs or presenting argument that the correct plaintiff has already been named.  If plaintiff fails to do so before trial, defendants may reurge this argument at trial.

Defendants' next argument is that Laufer Freight Lines, Ltd. had surrendered their license as an NVOCC before the events made the basis of this lawsuit.[31]  Plaintiff responds that Laufer Group International Ltd.'s license was valid and that all defendants knew that the services were being provided by Laufer Group International, Ltd. even though some of the bills of lading listed Laufer Freight Lines, Ltd.[32]  Defendants' argument in this regard is not that the tariff is invalid, but that it is not enforceable for shipments under bills of lading listing a different carrier. Plaintiff's argument is more persuasive on this issue.  The booking orders and invoices defendants rely on to show the existence of a written agreement with Laufer list the carrier as Laufer Group

---

[31] Id.

[32] See plaintiff's Opposition to Defendants' Motion for Summary Judgment, Docket Entry No. 112 at 10.

International, Ltd.[33] Defendants' own evidence and arguments indicate that it was aware that Laufer Group International, Ltd. was providing the shipping services. Accordingly, defendants are bound by an otherwise valid tariff posted by Laufer Group International, Ltd., even if some of the bills of lading list another Laufer entity.

Defendants' next argument is that the tariff is invalid because Laufer's Houston office, which organized these shipments, was unlicensed and unbonded in violation of 46 C.F.R. § 515.4(b). Even if defendants can prove a violation of the regulation, it is not enough to invalidate Laufer's tariff. "The Supreme Court long ago rejected the view that a tariff on file with the Commission and never rejected by it should be disregarded or treated as nonexistent merely because of some element of substantive unlawfulness in the rate or some irregularity in the tariff filing formalities." Genstar Chemical Ltd. v. I.C.C., 665 F.2d 1304, 1308 (D.C. Cir. 1981) (citing Davis v. Portland Seed Co., 264 U.S. 403, 44 S. Ct. 380, 68 L. Ed. 762 (1924); Berwind-White Coal Mining Co. v. Chicago & E.R., 235 U.S. 371, 35 S. Ct. 131, 59 L. Ed. 275 (1914)). "The principle in these cases is that where a shipper has been charged no more than the rate reflected in the tariff on file, the remedy for any unlawfulness or irregularity is measured not by

---

[33] See Shipping Documents, Exhibits K-N attached to Defendants' Motion for Summary Judgment, Docket Entry No. 94.

looking to some other tariff but by the harm, if any, caused by the unlawfulness or irregularity." Id. Accordingly, defendants cannot invalidate the filed tariff on the basis of a violation of 46 C.F.R. § 515.4(b). Moreover, defendants have not presented any evidence indicating harm suffered because of Laufer's failure to adequately register and bond its Houston office.

Defendants' final argument is that Laufer's tariff change requests did not observe the thirty-day waiting period required by 46 C.F.R. § 520.8(a), and the tariffs are therefore invalid. However, 46 C.F.R. § 520.8(a)'s waiting period only applies to increases in tariff rates. Because Laufer's tariff change requests were actually tariff reductions, no waiting period was required.[34] Moreover, defendants have also failed to provide evidence of harm suffered due to the alleged violation of 46 C.F.R. § 520.8(a).

Since none of defendants' attacks on Laufer's tariffs are legally sufficient to justify a declaration of voidness, the tariff is valid and will apply in the absence of a written agreement.

**B.   Plaintiff's Claims Against KSV**

Plaintiff's Motion for Summary Judgment also seeks judgment on the claims against defendant KSV. KSV has not responded to Laufer's motion. Local Rule 7.3 provides that "[o]pposed motions will be submitted to the judge twenty days from filing without

---

[34] See plaintiff's Opposition to Defendants' Motion for Summary Judgment, Docket Entry No. 112 at 13.

notice from the clerk and without appearance by counsel." S.D. Tex. R. 7.3 (2000). Local Rule 7.4 provides:

> Failure to respond will be taken as representation of no opposition. Responses to motions:
>
> A.  must be filed by the submission day;
>
> B.  must be written;
>
> C.  must include or be accompanied by authority; and
>
> D.  must be accompanied by a separate form order denying the relief sought.

S.D. Tex. R. 7.4 (2000). In accordance with Local Rule 7.4, the court takes KSV's failure to respond to Laufer's motion for summary judgment as a representation of no opposition to Laufer's summary judgment evidence.

Although a district court may not grant summary judgment by default simply because there is no opposition to the motion, the court may accept as undisputed the movant's version of the facts and grant a motion for summary judgment when the movant has made a prima facie showing of entitlement to summary judgment. See John v. State of Louisiana (Board of Trustees for the State Colleges and Universities), 757 F.2d 698, 708 (5th Cir. 1985) (when the movant's summary judgment evidence establishes its right to judgment as a matter of law, the district court is entitled to grant summary judgment absent unusual circumstances); and Eversly v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988) (when the nonmovant fails to respond to a motion for summary judgment, the court does not err

by granting the motion when the movant's submissions make a prima facie showing of entitlement to judgment as a matter of law). Because Laufer's version of the facts as supported by the published tariffs and invoices establishes an entitlement to payment from KSV, and because KSV does not dispute Laufer's version of the facts, the court concludes that Laufer is entitled to judgment as a matter of law on the claims alleged against KSV.

Laufer has presented evidence that the amount owed for unpaid services by KSV is $10,230.11.[35] KSV has not offered any evidence tending to show that the amount cited by Laufer is inaccurate. Accordingly, Laufer is entitled to judgment against KSV in the amount that it seeks.

## C.  Defendants' Counterclaims

Defendants also seek summary judgment on their counterclaims for overcharges and improper storage fees.[36] However, they do not point the court to documentary evidence supporting these claims, offering no more than conclusory statements of entitlement. Accordingly, they have not met the standard for summary judgment on these claims.

## IV.  Conclusion and Order

---

[35] See Declaration of Mark Laufer, at ¶ 58, Exhibit A attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 93.

[36] See Defendants' Motion for Summary Judgment, Docket Entry No. 102, at 23.

For the reasons stated above, Defendants' Motion for Summary Judgment (Docket Entry No. 102) is **DENIED**.  Defendant RGL-ROAM Enterprises d/b/a ROAM Enterprises' Joinder in Defendants' Motion for Summary Judgment (Docket Entry No. 103) is also **DENIED**.  Plaintiff's Motion for Summary Judgment (Docket Entry No. 93) is **GRANTED** as to KSV and **DENIED** as to all other defendants.  Laufer is **ORDERED** to file within ten days a motion and supporting affidavit to establish any attorney's fees and prejudgment interest it seeks.  KSV may respond within ten days after the receipt of Laufer's motion.

**SIGNED** at Houston, Texas, on this 1st day of September, 2009.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE